321 S.E.2d 699

**Patrolman Daniel L. McATEE**

v.

**Donald T. MENTZER.**

No. 15909.

Supreme Court of Appeals of
West Virginia.

Oct. 17, 1984.

Edward A. Zagula, Zagula & Hill, Weirton, for appellee.

William J. Ridgway, Weirton, for appellant.

NEELY, Justice:

In 1947 the City of Weirton promulgated rules and regulations for the governance of the city's police department. These rules and regulations were incorporated as Appendix B to the *Weirton City Code*. Rule 5(24) provides: "No member of the department shall engage either directly or indirectly as a vendor of intoxicating liquors." This regulation has been consistently enforced from its enactment until the present time.

In 1980 Patrolman Daniel L. McAtee of the Weirton Police Department decided that he wanted to become part owner of a Weirton private club that sells liquor. On 9 July 1980 Patrolman McAtee applied to

the State for a private club license and in August 1980, after the license was granted, he indirectly sold liquor as a proprietor of The Clover Club Association. Patrolman McAtee was aware that Rule 5(24) of Appendix B of the *Weirton City Code* prohibited his owning such a business; however, he maintained that the enactment of *W. Va. Code*, 60–7–1 [1967] *et seq.*, legalizing the sale of liquor by the drink in private clubs, made Rule 5(24) an unreasonable restraint on his liberty. In this latter regard he points out that when Appendix B to the *Weirton City Code* was promulgated in 1947 all private sales of liquor were illegal.

On 23 July 1980 Patrolman McAtee wrote a letter to Chief William Hair of the Weirton Police Department outlining his objections to the enforcement of Rule 5(24). This letter demonstrates that Patrolman McAtee was well aware of the provisions of Rule 5(24) before he began negotiations to purchase his interest in the saloon. In response to Patrolman McAtee's 23 July letter the Chief of Police indicated to Patrolman McAtee that ownership of a saloon would result in the patrolman's dismissal. The city was, however, sufficiently circumspect about enforcing Rule 5(24) that Patrolman McAtee was not discharged until after the city received an opinion from the Attorney General indicating that Rule 5(24) is enforceable. Mayor Donald T. Mentzer then wrote to Patrolman McAtee on 14 May 1981 to inform him that he was discharged from the department.

Patrolman McAtee appealed to the Weirton Police Civil Service Commission which, on 27 July 1981, affirmed the mayor's action. Patrolman McAtee then appealed to the Circuit Court of Hancock County where his discharge was overturned on the grounds that: (1) Patrolman McAtee was not engaged in an unlawful or disreputable business; (2) the *Rules and Regulations for the Government of the Police Department* were not distributed to members of the police department; (3) other police officers regularly engaged in second jobs; and, (4) the *Rules and Regulations* as a whole were never uniformly observed. The circuit court reinstated Patrolman McAtee

and the City of Weirton appealed to this Court. We reverse.

## I

The appellee relies in this Court on his argument below that there was no formal distribution of the *Rules and Regulations for the Government of the Police Department* and that in many instances the rules concerning outside employment were not enforced. We find appellee's argument in these regards unpersuasive; all of the *Rules and Regulations* were available in the office of the city clerk. Furthermore, there is no question that the appellee had actual notice of Rule 5(24) at the time he decided to purchase the private club.

The petitioner argues that the enforcement of the *Rules* was generally lax. He points out that police officers seldom complied with the rules governing outside employment by applying for written permission to be employed in second jobs and that one police officer had a job working for a private detective firm. Appellee also argues that because the police fraternal lodge itself has a liquor license and regularly dispenses alcoholic beverages during family picnics sponsored by the Fraternal Order of Police, to enforce the prohibition of Rule 5(24) only against him would be discriminatory.

The fact, however, that there was comparatively lax enforcement of rules and regulations that were of no substantial moment does not invalidate the strict enforcement of a rule that goes directly to the heart of the integrity of a police department. By enforcing Rule 5(24) strictly with regard to appellee, the City did not deny him equal treatment or discriminate against him as there is no evidence that the department ever allowed any other officer to own or work in a private club whose membership was open to the public, and it is clear that everyone in the department, particularly Patrolman McAtee, had notice that Rule 5(24) is strictly enforced.

## II

Although, *W. Va. Code*, 60–7–1 [1967] *et seq.* allows the appellee to be the owner of a private club that serves alcoholic beverages, nothing in the *Constitution of the United States*, the *Constitution of the State of West Virginia*, or the *West Virginia Code* authorizes the appellee to be the owner of a private club that serves alcoholic beverages at the same time that he is a police officer. The weight of authority throughout the United States is that the sensitive nature of a policeman's job, the strict need for both propriety and the appearance of propriety, the desirability of having off-duty policemen available, and the alertness that is required of an officer while on duty, allow a government employer to impose more rigorous controls on the outside activities of police officers than it may impose on government employees generally. *See* Annot., 88 A.L.R.2d 1235; Annot., 94 A.L.R.3d 1230.

The Supreme Court has indirectly addressed the issue of outside employment of police officers by noting the standard for review of police regulations. In *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) the Court held that a hair-length regulation did not violate any right guaranteed policemen by the Fourteenth Amendment. The Court, insisting that police regulations be given a "wide latitude," shifted the burden of proof to show unconstitutionality from the police commissioners to the challengers. The question to be asked was "whether the [challengers of the regulation] can demonstrate that there is no rational connection between the regulation, based as it is on the county's method of organizing its police force, and the promotion of safety of persons and property." *Id.*, at 247, 96 S.Ct. at 1446.

Both state and federal courts almost unanimously have sustained police regulations that prohibit outside employment. *See, e.g., Vorbeck v. Schnicker*, 660 F.2d 1260 (8th Cir.1981), *cert. denied*, 445 U.S. 921, 102 S.Ct. 1278, 71 L.Ed.2d 462 (1982) [police regulations prescribing conduct "unbecoming to a member of the Department"

sustained]; *Borlin v. Civil Service Com'n of Council Bluffs*, 338 N.W.2d 146 (Iowa 1983) [police regulation prohibiting its officers from undertaking secondary employment upheld]; *Trelfa v. Centre Island*, 54 App.Div.2d 985, 389 N.Y.S.2d 22 (1976) [prohibition of outside work by policemen held appropriate and essential unless suspended from duty without pay]; *Cox v. McNamara*, 8 Or.App. 242, 493 P.2d 54 (1972), *cert. denied*, 409 U.S. 882, 93 S.Ct. 169, 34 L.Ed.2d 137 (1972) [regulation forbidding outside work upheld as reasonable and consistent with proper and effective internal police administration].

■ Sound public policy strongly justifies a rule that forbids ownership of or employment in a private club that serves liquor. Consequently Patrolman McAtee's argument that he planned not to work in the club but merely to own it is not well taken. A policeman, by virtue of his office, is licensed to carry firearms, and should the officer find himself in an altercation in his own club during which he uses any of the powers of his office to further his own personal interests, the City is exposed to liability. In addition, conflicts of interest or the appearance of conflicts of interest will inevitably arise when policemen are allowed to engage in one of the most extensively regulated businesses in the State. After all, it is the police officer himself, or his close professional associates, who are responsible for enforcing the liquor laws.

Accordingly, we hold that the Circuit Court of Hancock County was clearly wrong in reversing the Police Civil Service Commission's order discharging the appellee. We reverse the Circuit Court and remand the case for further proceedings consistent with this opinion.

Reversed and remanded.