668 S.E.2d 182

**Sergeant Glen MESSER of the Sheriff's Department of Mingo County, West Virginia, Plaintiff Below, Appellee**

v.

**Sheriff Lonnie HANNAH Sheriff of Mingo County, West Virginia, Defendant Below, Appellant.**

No. 33655.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 12, 2008.

Decided June 26, 2008.

554

Jeffrey M. Wakefield, Esq., Jaclyn A. Bryk, Esq., Flaherty, Sensabaugh & Bonasso, PLLC, Charleston, for the Appellant.

C. Christopher Younger, Esq., Williamson, for the Appellee.

BENJAMIN, Justice:

This case, concerning the indefinite suspension of a deputy sheriff from his employment, is before this Court upon the appeal of Lonnie Hannah, Sheriff of Mingo County, West Virginia, from the final order of the Circuit Court of Mingo County entered on January 30, 2007. Pursuant to that order, the Circuit Court affirmed the decision of the Mingo County Civil Service Commission for Deputy Sheriffs reinstating the appellee, Sergeant Glen Messer, to his former rank and position in the Sheriff's office with full back pay and with no charges placed upon his record. The Commission also awarded Sergeant Messer reasonable attorney fees.

This matter arose from Sergeant Messer's indefinite suspension in May 2006 for submitting false requests for overtime pay concerning his participation in specialized training at the State Police Academy in Kanawha County, West Virginia, from April 10, 2006, through April 13, 2006. Sergeant Messer's requests for overtime pay included sixteen hours in travel time for trips between Mingo County and the Academy that week. The Civil Service Commission and the Circuit Court determined that at least four hours of the requested travel time were questionable because Messer, unknown to Sheriff Hannah, had rented a motel room near the Academy for the April 10—April 13 period. Nevertheless, the Commission and the Circuit Court concluded that the transgression was trivial, inconsequential and without wrongful intention on the part of Sergeant Messer.

This Court has before it the petition for appeal, the designated record and the briefs and argument of counsel. As discussed below, syllabus point 2 of *In re: Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996), holds that an appellate court may properly reverse the decision of a Civil Service Commission where the Commission has "failed to consider an important aspect of the problem." In this case, the decision of the Commission failed to mention the evidence of record concerning the Mingo County Prosecuting Attorney's involvement during the investigation into Sergeant Messer's requested travel time and his conclusion that Sergeant Messer's "integrity and credibility as a law enforcement officer has been irreparably compromised." Moreover, although acknowledging the Prosecuting Attorney's involvement and conclusion, the Circuit Court failed to address those matters in its order affirming Sergeant Messer's reinstatement.

Consequently, for the reasons set forth below, this Court reverses the January 30, 2007, order of the Circuit Court of Mingo County and remands this case to the Circuit Court with directions to enter an order reinstating the indefinite suspension.imposed upon Sergeant Messer by appellant Hannah.

## I.

### Factual and Procedural Background

On April 10, 2006, through April 13, 2006, Sergeants Glen Messer and Charlie Justice of the Mingo County Sheriff's Office participated in specialized training at the State Police Academy located at Institute in Kanawha County. Both Sergeant Messer and Sergeant Justice, who drove separate vehicles, were authorized by the appellant, Sheriff Hannah, to request two hours of overtime, each way, for travel to and from the Academy. Upon completion of the training, Sergeant Messer requested, in writing, sixteen hours in overtime pay for travel between Mingo County and the Academy, whereas Sergeant Justice requested twelve hours. Although a check payable to Sergeant Messer for the overtime was subsequently issued, Sheriff Hannah withheld it upon discovering the discrepancy.

Sergeant Justice explained to appellant Hannah that he only requested twelve hours for travel time because on April 12, 2006, he and Messer stayed at a Motel 6 near the Academy. Justice later testified before the

Civil Service Commission that he and Messer were in a training session at the Academy until 10:00 p.m. that evening. In his request for overtime, however, Sergeant Messer indicated that, on April 12, he began driving back to Mingo County at 9:00 p.m. He also indicated that he drove back to the Academy the following morning.

In May 2006, Sheriff Hannah requested a State Police investigation, and Trooper Mike LaFauci was assigned to the case. Soon after, Trooper LaFauci spoke with Sheriff Hannah and with Michael Sparks, Prosecuting Attorney of Mingo County. At Spark's direction, LaFauci obtained the guest record from Motel 6 which revealed that Sergeant Messer rented the motel room for the entire April 10—April 13 period. Trooper LaFauci also spoke with Messer who admitted renting the room and stated that he "had stayed at the hotel some and that he had driven home a few times." In addition, Sergeant Messer indicated to LaFauci that he paid for the room himself and thought, at the time, that requesting the overtime would be less expensive for the County than requesting reimbursement for the motel stay. By letter dated May 12, 2006, however, Sheriff Hannah placed Sergeant Messer upon indefinite suspension without pay.

Concluding that the evidence was sufficient to charge Sergeant Messer with attempting to obtain money by false pretenses, Prosecuting Attorney Sparks directed Trooper LaFauci to prepare a grand jury report and, perceiving a conflict concerning his representation of county officials, sought the appointment of a special prosecutor. Although the record does not show that the matter of Sergeant Messer's overtime was ever presented to a grand jury or that a special prosecutor was appointed, Sparks, in a letter to Sheriff Hannah dated July 7, 2006, indicated that Messer had violated the provisions of W. Va.Code § 61-3-24 (1994) (concerning obtaining money by false pretenses), and W. Va.Code § 61-11-8 (2002) (concerning attempts). The letter further stated:

Sergeant Messer's integrity and credibility as a law enforcement officer has been irreparably compromised. Therefore, I hereby advise you that I will not prosecute any case in which MCSD Sergeant Messer is the primary investigating officer. To do so would be inconsistent with the public interest in the fair administration of justice.

Sergeant Messer filed a grievance with the Mingo County Civil Service Commission for Deputy Sheriffs. See W. Va.Code § 7-14-1 (1991), et seq. An evidentiary hearing was conducted on July 18, 2006. Appellant Hannah testified and called Sergeant Justice, Trooper LaFauci and Prosecuting Attorney Sparks as witnesses. Sergeant Messer called no witnesses and declined to testify citing Fifth Amendment grounds. On September 19, 2006, the Commission issued its decision reinstating Sergeant Messer to his former rank and position in the Mingo County Sheriff's Office with full back pay and no charges placed upon his record. The Commission also awarded Messer reasonable attorney fees. The Commission concluded that, although Sergeant Messer may have overstated his travel time between Mingo County and the Academy by four hours, the transgression was trivial, inconsequential and without wrongful intention on the part of Messer. Moreover, the Commission concluded that Sheriff Hannah should have handled the matter administratively rather than by initiating a State Police investigation. The Commission, however, failed to mention the involvement and conclusion of Prosecuting Attorney Sparks.

Sheriff Hannah appealed, and on January 30, 2007, the Circuit Court entered a final order affirming the Commission's decision. In the order, the Circuit Court restated the findings of the Commission and held that the Commission's decision was supported by substantial evidence. As the order concluded:

Sheriff Hannah asserts that if the Court affirms the Commission's ruling, Messer will go unpunished for the alleged wrongfully submitted three to four hours of overtime (if, in fact, it was greater than the non-billed hotel charges). However, the Court finds that while Messer was reinstated and awarded back pay by the Commission, Messer was suspended several months from his duties before the Commission entered its Order, lost overtime

opportunities and suffered obvious significant embarrassment, along with the threat of criminal prosecution[.]

Nevertheless, although setting forth the involvement and conclusion of Prosecuting Attorney Sparks in the context of Sheriff Hannah's arguments upon appeal from the Commission, the Circuit Court never addressed the significance of Sparks' actions in terms of whether, or to what extent, those actions were relevant to Sheriff Hannah's decision to place Messer upon indefinite suspension.

It is from the January 30, 2007, order of the Circuit Court that Sheriff Hannah seeks relief in this Court.

## II.

### Standards of Review

Chapter 7, Article 14, of the West Virginia Code provides for the establishment, powers and duties of county civil service commissions for deputy sheriffs. Pursuant to W. Va.Code § 7–14–17(a) (1996), no deputy sheriff may be removed, discharged or suspended from his or her employment "except for just cause." Section 17(a) also provides:

> If the deputy demands it, the civil service commission shall grant a public hearing[.] * * * At the hearing, the burden shall be upon the sheriff to justify his or her action, and in the event the sheriff fails to justify the action before the commission, then the deputy shall be reinstated with full pay, forthwith and without any additional order, for the entire period during which the deputy may have been prevented from performing his or her usual employment, and no charges may be officially recorded against the deputy's record. The deputy, if reinstated or exonerated shall, if represented by legal counsel, be awarded reasonable attorney fees[.]

■ Reviewing the "just cause" standard under the nearly identical 1981 version of W. Va.Code § 7–14–17(a), this Court, in syllabus point 2 of *Mangum v. Lambert*, 183 W.Va. 184, 394 S.E.2d 879 (1990), held: "*W. Va. Code,* § 7–14–17 (1981), requires that dismissal of a deputy sheriff covered by civil service be for just cause, which means mis-

conduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention." *Alden v. Harpers Ferry Police Civil Service Commission*, 209 W.Va. 83, 88 n. 14, 543 S.E.2d 364, 369 n. 14 (2001); syl. pt. 2, *McMillian v. Ashley*, 193 W.Va. 269, 455 S.E.2d 921 (1995).

■ In this case, the Civil Service Commission, following the July 18, 2006, evidentiary hearing, concluded that Sergeant Messer's probable overstatement of travel time was trivial, inconsequential and without wrongful intention. The Circuit Court found that the Commission's conclusion was supported by substantial evidence and affirmed Messer's reinstatement. In syllabus point 4 of *In re: Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996), this Court observed: " 'Substantial evidence' requires more than a mere scintilla. It is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. If an administrative agency's factual finding is supported by substantial evidence, it is conclusive." *Maplewood Estates v. Putnam County Planning Commission*, 218 W.Va. 719, 723, 629 S.E.2d 778, 782 (2006). *See also*, syllabus point 1 of *Mangum, supra*, which holds that "[a] final order of a deputy sheriffs' civil service commission, based upon findings not supported by the evidence, upon findings contrary to the evidence, or upon a mistake of law, will be reversed and set aside by this Court upon review." Syl. pt. 1, *McMillian, supra*.

■ The *In re: Queen* case concerned a different, but comparable, statutory scheme relating to county civil service commissions for correctional officers. W. Va.Code § 7–14B–1 (1991), *et seq.* Similar to W. Va.Code § 7–14–17(a) (1996), pertaining to deputy sheriffs, W. Va.Code § 7–14B–17(a) (1983), concerning correctional officers, provides that such officers could not be removed, discharged or suspended "except for just cause." In that context, syllabus point 2 of *In re: Queen* held:

> An appellate court may reverse a decision of the Correctional Officers' Civil Ser-

vice Commission as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

Syl. pt. 4, *Legg v. Felinton*, 219 W.Va. 478, 637 S.E.2d 576 (2006); *Collins v. City of Bridgeport*, 206 W.Va. 467, 472, 525 S.E.2d 658, 663 (1999).

■ Applying syllabus point 2 of *In re: Queen* to the statutory scheme before us, we hold that an appellate court may reverse a decision of the Civil Service Commission for Deputy Sheriffs, W. Va.Code § 7–14–1 (1991), *et seq.*, as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered an explanation that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

This Court will apply the above principles to the circumstances of this case.

## III.

### Discussion

As stated above, the Civil Service Commission in its September 19, 2006, decision failed to mention the evidence of record concerning Prosecuting Attorney Sparks' involvement during the investigation into Sergeant Messer's requested overtime pay and Sparks' conclusion that Sergeant Messer's "integrity and credibility as a law enforcement officer has been irreparably compromised." Moreover, although acknowledging Sparks' involvement and conclusion, the Circuit Court failed to address those matters in its order affirming Messer's reinstatement. Appellant Hannah contends that those omissions warrant a reversal of the Circuit Court's January 30, 2007, order and a reinstatement of Messer's indefinite suspension.

The record demonstrates that Prosecuting Attorney Sparks' participation in this matter began prior to his July 7, 2006, letter to Sheriff Hannah. When Sheriff Hannah requested the State Police investigation in May 2006, Trooper LaFauci spoke with Sparks soon thereafter, and Sparks directed LaFauci to obtain the Motel 6 guest record for the period of Sergeant Messer's attendance at the Academy. At some point, Sparks concluded that the evidence was sufficient to charge Sergeant Messer with attempting to obtain money by false pretenses. Sparks then directed Trooper LaFauci to prepare a grand jury report and sought the appointment of a special prosecutor. In any event, Sparks and Sheriff Hannah discussed the overtime matter prior to Sparks' July 7, 2006, letter. As Sheriff Hannah testified during the hearing before the Commission:

> Q. Had prior to July 7, 2006, Prosecuting Attorney Sparks, had [sic] advised you orally that he had concerns that are expressed within the letter that is Plaintiff Exhibit No. 12?
>
> A. Yes.

Plaintiff's Exhibit No. 12, Sparks' letter, stated that Sergeant Messer had committed a statutory offense and that his integrity and credibility as a law enforcement officer had been irreparably compromised. During the subsequent hearing before the Commission, Trooper LaFauci indicated that, although the evidence relating to the four hours in question was sufficient to charge Sergeant Messer with attempting to obtain money by false pretenses, he felt that the problem was more administrative than criminal and should have been handled by the Sheriff internally. Prosecuting Attorney Sparks, however, was less yielding and testified as follows:

> Therefore, I sent a letter down to the Sheriff and advised him that I would not prosecute any case in which Sergeant Messer was the primary investigating officer for obvious reasons. If I question his credibility based upon what happened, how could I put him, in good faith, on the witness stand to testify against a defendant that may have done a similar act or so forth.

In *McAtee v. Mentzer*, 174 W.Va. 49, 321 S.E.2d 699 (1984), this Court recognized the "sensitive nature" of a law enforcement officer's job and the strict need for proper conduct. 174 W.Va. at 51, 321 S.E.2d at 702. Thus, syllabus point 5 of *Mangum, supra,* holds: "Seriously wrongful conduct by a civil service employee can lead to dismissal even if it is not a technical violation of any statute. The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the rights and interests of the public." *Roach v. Regional Jail Authority,* 198 W.Va. 694, 701, 482 S.E.2d 679, 686 (1996); syl. pt. 3, *State ex rel. Ashley v. Civil Service Commission for Deputy Sheriffs,* 183 W.Va. 364, 395 S.E.2d 787 (1990).

In this case, Sheriff Hannah initiated the State Police investigation concerning Sergeant Messer's questioned overtime request, and Prosecuting Attorney Sparks took an active role, early on, in several of the events which followed. Sparks ultimately concluded: (1) that Sergeant Messer violated the law, (2) that Messer's integrity and credibility as a law enforcement officer were "irreparable damaged" and (3) that Sparks would not prosecute any case in which Sergeant Messer was the primary investigating officer. Sparks communicated with Sheriff Hannah orally and in writing. While it would not be appropriate for this Court, at this point, to preemptively decide upon the correctness of, or justification for, Prosecuting Attorney Sparks' actions and conclusions, this Court can say unequivocally that those matters were a necessary incident to the circumstances under consideration below and should have been *fully assessed* by the Civil Service Commission and the Circuit Court. Having neglected to do so, the Commission and the Circuit Court "failed to consider an important aspect of the problem" within the meaning of syllabus point 2 of *In re: Queen.* *In re: Queen* concerned a comparable statutory scheme relating to county civil service commissions for correctional officers. We believe our conclusions therein are equally applicable here. As the opinion in *In re: Queen* explains:

The record must demonstrate that the Commission considered all the evidence, but a Commission is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting its decision, the Commission, as the factfinder, also must discuss the uncontroverted evidence it chooses not to rely upon, as well as significantly probative evidence it rejects. Thus, a minimal level of articulation of the Commission's assessment of the evidence is required in cases in which considerable evidence is presented to counter the Commission's position.

196 W.Va. at 447 n. 5, 473 S.E.2d at 488 n. 5.

Finally, it should be noted that following the July 18, 2006, evidentiary hearing during which numerous exhibits and the testimony of appellant Hannah, Sergeant Justice, Trooper LaFauci and Prosecuting Attorney Sparks were received, the Commission failed to make a factual finding in its September 19, 2006, decision concerning whether Sergeant Messer actually overstated his travel time to and from the Academy, particularly with regard to the four hours relating to April 12 and April 13, 2006. Although Sergeant Messer told Trooper LaFauci that he "had stayed at the hotel some and that he had driven home a few times," Sergeant Justice indicated that he and Messer stayed at the Motel 6 on the night of April 12. The decision of the Commission was equivocal, however, in that it merely concluded that "it appears that Messer may [have] overstated his overtime" by four hours.

## IV.

### Conclusion

Upon all of the above, this Court reverses the final order of the Circuit Court of Mingo County, West Virginia, entered on January 30, 2007, and remands this case to the Circuit Court for the entry of an order reinstating the indefinite suspension imposed upon Sergeant Messer by the appellant, Sheriff Hannah.[1]

**Reversed and Remanded with Directions**

1. In so holding, this Court recognizes that the indefinite suspension of Sergeant Messer, thus reinstated, may constitute a *de facto* termination of his employment.

**560**

Justices STARCHER and ALBRIGHT dissent and reserve the right to file dissenting opinions.

STARCHER, J., dissenting:

I dissent because there was not enough evidence of serious misconduct by the sergeant to warrant severe disciplinary action. He apparently spent his own money to stay the night in a motel, and made up the cost by adding four hours of overtime—which would have been his travel time for commuting back and forth to his home. This was not correct procedure, but it also was not theft of funds or services. The Commission did the right thing; the circuit judge did the right thing; and on remand they should adhere to their result. The sergeant deserves a reprimand; but the prosecutor is "making a mountain out of a molehill." I would simply affirm the actions of the Commission and the circuit court.

I am authorized to say that Justice Albright joins in this dissent.